LANDAU GOTTFRIED & BERGER LLP
MICHAEL I. GOTTFRIED (State Bar No. 146689)
MONICA RIEDER (State Bar No. 263250)
1801 Century Park East, Suite 1460
Los Angeles, California 90067
Telephone: (310) 557-0050
Facsimile: (310) 557-0056
mgottfried@lgbfirm.com
mrieder@lgbfirm.com

Proposed Counsel for Chapter 11
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re

944 MEDIA, LLC,

      Debtor.

Bk. No. 2:10-23240-AA
Chapter 11

**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO (1) PAY PRE-PETITION WAGES AND (2) HONOR ACCRUED VACATION AND LEAVE BENEFITS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: [Refer to Notice]
Time: [Refer to Notice]
Place: Courtroom 1375
      255 E. Temple Street
      Los Angeles, CA 90012

LANDAU
GOTTFRIED
& BERGER LLP

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; THE DEBTOR'S TWENTY LARGEST UNSECURED CREDITORS; THE DEBTOR'S SECURED CREDITORS; AND OTHER PARTIES ENTITLED TO NOTICE:**

Pursuant to Local Bankruptcy Rules 2081-1(a)(6) and 9075-1 and 11 U.S.C. §§ 105(a) and 507(a)(4) and (a)(5), 944 Media, LLC (the "Debtor"), hereby moves the Court for entry of an order authorizing the Debtor to (1) pay pre-petition wages, commissions, benefits, and reimbursable expenses (collectively, "Wages") to its employees, and (2) honor pre-petition accrued vacation and leave benefits in the ordinary course of the Debtor's business, provided that no employee will receive over $10,950 in value on account of the foregoing pre-petition claims.

The Debtor commenced operations in 2001, originally publishing a monthly lifestyle and entertainment magazine in Tempe, Arizona. Since then, the Debtor has expanded to ten markets across the country—Atlanta, Dallas, Detroit, Las Vegas, Los Angeles, Miami, Orange County, Phoenix, San Diego, and San Francisco. The Debtor continues to publish the magazine (entitled *944*) on a monthly basis, customizing the issues to feature local personalities, events, clubs, restaurants, fashion, and news in each market. The Debtor also delivers content and creates advertising opportunities through innovative multi-media channels, including weekly electronic newsletters, daily website content, and experiential marketing campaigns. Finally, in conjunction with various marketing partners, the Debtor produces and promotes major events, including events related to the Super Bowl, NBA All-Star Games, the Coachella Valley Music and Arts Festival, and the Sundance Film Festival.

The Debtor currently employs approximately 70 individuals (the "Employees"), who work in the Debtor's corporate office in Los Angeles, California, and in the Debtor's regional offices in each of the local *944* markets. All Employees are full-time salaried employees and they are paid semi-monthly, on the first and the sixteenth of each month. While the Employees' salary has been paid through March 31, 2010, the Employees hold pre-petition salary claims for the period from April 1, 2010, through April 6, 2010. Some Employees also receive commissions; all commissions earned during a particular month are paid with the payroll on the

sixteenth of the following month. Accordingly, some Employees hold pre-petition claims for commissions earned during March, which would ordinarily be paid on April 16, 2010. Certain Employees are entitled to reimbursement of approved business expenses. Reimbursements occur on the next payroll date following submission and approval of the expense report. Accordingly, some Employees hold reimbursement claims for business-related expenses incurred pre-petition. Also, many of the Employees have accrued vacation and leave time. The Employees will have priority claims under 11 U.S.C. § 507(a)(4) for all these amounts if they are not paid by the Debtor. Further, the Debtor cannot continue to operate and reorganize without the assistance of its Employees. Accordingly, the Debtor is seeking to pay the pre-petition Wages and to honor the vacation and leave benefits in the ordinary course of business.

The funds used to pay the pre-petition Wages and honor the accrued vacation and leave benefits will come from the Debtor's revenue and/or from the debtor in possession financing provided to the Debtor by Orbitron Holdings, LLC ("Orbitron"). Orbitron is the only entity with a security interest covering the Debtor's revenue. The Debtor is filing, concurrently herewith, a motion for authorization to use Orbitron's cash collateral and for approval of the debtor in possession financing.

In order to provide the maximum notice of this Motion possible on an emergency basis, the Debtor will serve a copy of this Motion and all supportive papers, along with a Notice of Hearing on First Day Motions stating the time and date of the hearing on the Motion (once assigned by the Court), on the Office of the United States Trustee, all secured creditors and their counsel (if known), and the Debtor's twenty largest unsecured creditors, via first-delivery overnight mail today, April 7, 2010. Accordingly, these parties will receive delivery of the Motion and Notice no later than Thursday, April 8, 2010, at 10:00 a.m.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

(a) granting the Motion;

(b) affirming the adequacy of the notice given;

(c) finding that the relief requested in the Motion is necessary to avoid immediate and irreparable harm; and

1  (d) authorizing the Debtor to (i) pay all pre-petition Wages to its employees and (ii) honor accrued vacation and leave benefits in the ordinary course of business, provided that no Employee shall receive over $10,950 in value on account of pre-petition claims for Wages and vacation and leave benefits.

Dated: April 7, 2010

LANDAU GOTTFRIED & BERGER LLP
MICHAEL I. GOTTFRIED
MONICA RIEDER

By: _____
Michael I. Gottfried
Proposed Counsel for 944 Media, LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

### A. Background

On April 6, 2010, 944 Media, LLC (the "Debtor"), commenced this case by filing a petition under Chapter 11 of Title 11 of the United States Code. The Debtor commenced operations in 2001, originally publishing a monthly lifestyle and entertainment magazine in Tempe, Arizona. Since then, the Debtor has expanded to ten markets across the country—Atlanta, Dallas, Las Vegas, Los Angeles, Miami, Orange County, Phoenix, San Diego, and San Francisco. The Debtor continues to publish the magazine (entitled *944*) on a monthly basis, customizing the issues to feature local personalities, events, clubs, restaurants, fashion, and news in each market. The Debtor also delivers content and creates advertising opportunities through innovative multi-media channels, including weekly electronic newsletters, daily website content, and experiential marketing campaigns. Finally, in conjunction with various marketing partners, the Debtor produces and promotes major events, including events related to the Super Bowl, NBA All-Star Games, the Coachella Valley Music and Arts Festival, and the Sundance Film Festival.

The bankruptcy filing was precipitated by legal issues, including two state court lawsuits filed against the Debtor. One of these cases relates to claims made by a former employee of the Debtor. The other, which is currently before an arbitrator, involves damages sought by the Debtor's former partner in a joint venture created to produce a Super Bowl event. The Debtor plans to resolve the litigation claims through the bankruptcy case and to file a Chapter 11 plan well before the expiration of the exclusivity period. In the meantime, the Debtor will continue to operate its business as a debtor in possession.

### B. The Debtor's Employees And Compensation Procedures

The Debtor currently employs approximately 70 individuals (the "Employees"), who work in the Debtor's corporate office in Los Angeles, California, and in the Debtor's regional offices in each of the local *944* markets. A list of the Employees is attached as Exhibit "3" to the

Declaration of Marc Lotenberg in Support of First Day Motions ("Lotenberg Declaration").

The Employees are compensated with a combination of salary, commissions, insurance benefits, and/or reimbursement of business expenses (collectively, "Wages"). All Employees are full-time salaried employees and they are paid semi-monthly, on the first and the sixteenth of each month. Salaries are paid on a current basis through the date of payroll. In addition to salaries, many of the Debtor's Employees receive 5-15% commissions based on the amount of revenue generated. All commissions earned during a particular month are paid with the payroll on the sixteenth of the following month. Further, certain Employees are entitled to have approved business expenses reimbursed by the Debtor, including parking, airfare, hotel, taxi, meal, and entertainment expenses. Reimbursements occur on the next payroll date following submission and approval of the expense report.

The Debtor also pays part of the cost for medical insurance for its Employees. (Vision and dental insurance is also available to Employees, but the Debtor does not contribute to the cost.) The Debtor pays the premiums for the medical insurance, as well as its workers' compensation insurance premiums, by remitting the necessary amount to its payroll company, DHR, with each semi-monthly payroll. In the normal course of its relationship with DHR, the Debtor transfers the funds necessary for the payment of that period's Wages to DHR approximately 48 hours before the payroll date. DHR then pays the insurance premiums and transfers the Employees' salary, commissions, and expenses to the Employees by direct deposit.

**C. Pre-Petition Claims Held By Employees**

*1. April 16, 2010 payroll*

On April 1, 2010, the Debtor paid Wages to its Employees for the period from March 16, 2010 through March 31, 2010. The total amount of Wages paid on April 1, 2010, was approximately $160,000. On April 16, 2010, the Debtor will owe the following amounts to its Employees:

(1) salary for the period from April 1, 2010 through April 15, 2010, of which the salary for four working days (April 1, April 2, April 5, and April 6) will constitute a pre-petition obligation;

(2) commissions for the month of March, all of which will constitute a pre-petition obligation;

(3) reimbursement of any approved business expenses for which reports are submitted prior to April 5, 2010, and subsequently approved by the Debtor, all of which will constitute a pre-petition obligation; and

(4) medical and workers' compensation insurance payments for the period from April 1, 2010 through April 15, 2010, of which the insurance premiums for four working days (April 1, April 2, April 5, and April 6) will constitute a pre-petition obligation.

The Debtor estimates that the total payroll obligations due on April 16, 2010, including all payroll taxes, will be approximately $210,000 (approximately $100,000 of which will be for pre-petition claims, comprising $59,000 for four days' salary and insurance plus $40,000 in accrued commissions for March). The foregoing amount will need to be transferred to DHR no later than 48 hours prior to April 16, 2010.

*2. Ongoing reimbursement of expenses and honoring of vacation and leave benefits in the ordinary course of business*

In addition to making the above-described payments on account of pre-petition claims as part of its April 16, 2010 payroll, the Debtor seeks authority to reimburse its Employees for approved business expenses incurred pre-petition when they are presented for payment according to the Debtor's usual business practices. The Debtor believes that the amount of any outstanding reimbursable expenses is less than $2,000. Further, most of the Debtor's Employees have accrued PTO ("paid time off," which includes both vacation and sick leave) hours. These hours are listed, on an employee-by-employee basis, on Exhibit "4" to the Lotenberg Declaration. Except as required by state law, the Debtor's future policy will be to permit Employees to use these PTO hours at their discretion, but not to pay out unused PTO hours when an Employee leaves the Debtor's employment. Accordingly, the Debtor seeks authority to permit its Employees to use their remaining PTO hours, at their discretion, in the ordinary course of the Debtor's business.

///

## II.

## ARGUMENT

### A. The Court Has the Authority to Authorize Immediate Payment of Pre-Petition Priority Claims

An order authorizing the Debtor to pay the pre-petition claims of its Employees is necessary for the Debtor to reorganize and confirm a Chapter 11 plan and, as such, may appropriately be issued by this Court. Under 11 U.S.C. 105(a), the court may issue "any order . . . that is necessary or appropriate to carry out the provisions of this title." Specifically, courts may authorize the payment of pre-petition debts when such payments are necessary for the Debtor to continue operating and have a chance at reorganization. *See, e.g., In re Payless Cashways, Inc.*, 268 B.R. 543, 546 (Bankr. W.D. Mo. 2001) ("Since enactment of the Code, various courts have permitted have permitted debtors-in-possession to pay pre-petition debts on the grounds that payment of such claims was necessary to effectuate a successful reorganization, or at least to give the debtor the opportunity to propose any type of plan at all."). As one court has noted, "[t]he ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). This power is based on the equitable "necessity of payment" doctrine, first articulated by the U.S. Supreme Court in *Miltenberger v. Logansport, C. & S.W. R. Co.*, 106 U.S. 286 (1882), which "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *Id.* at 176. Further, authorizing the Debtor to pay pre-petition Wages to its Employees and to honor their vacation and leave benefits does not implicate the absolute priority rule, because all the claims this Motion seeks authority to pay would be priority claims against the estate under 11 U.S.C. § 507(a)(4) or (a)(5). Accordingly, authorizing payment of these claims now simply anticipates the eventual distribution the Employees would receive on account of their priority claims, as well as providing the Debtor with the support necessary to attempt a successful reorganization.

### B. The Debtor's Business Would Suffer Immediate and Irreparable Harm If the

**Debtor Cannot Provide Its Employees with Salary and Benefits**

The Debtor cannot continue to operate and has no chance at a successful reorganization without the continued presence and dedicated efforts of its Employees, particularly in the critical first few weeks of the case. The Debtor's success depends on maintaining relationships with advertisers, who interact primarily with the Debtor's sales representatives in each market. Advertising revenues depend heavily on the timely publication of *944*, particularly since many of the advertisements in the magazine are for events that are happening on a particular date. Delaying the publication of *944* even once will harm the Debtor's business; failure to publish an issue might destroy it. The Debtor cannot produce and print the magazine without the ongoing efforts of its Employees. If the Debtor fails to honor its wage and benefit obligations to the Employees, it is likely that many of them will quit, crippling the Debtor's business. Accordingly, it is vital that the Debtor be able to continue paying Wages and providing benefits to its Employees without interruption. On that basis, the Debtor respectfully submits that the relief requested in the Motion is necessary to avoid immediate and irreparable harm and that it is appropriate for the Court to grant the Motion on an emergency basis. *See* Fed. R. Bankr. P. 6003(b) (in the first 21 days of the case, the court may grant a motion to pay part or all of a claim that arose before the filing of the petition "only to the extent that relief is necessary to avoid immediate and irreparable harm").

**C. As Set Forth In the Lotenberg Declaration, All Conditions Imposed by Local Bankruptcy Rule 2081-1(a)(6) Are Met**

Under Local Bankruptcy Rule 2081-1(a)(6), the Debtor may file an emergency motion for authority to pay prepetition payroll and to honor prepetition employment procedures. In support of such a motion, the Debtor must provide evidence establishing that seven conditions are met. Paragraphs 34 through 40 of the Lotenberg Declaration filed concurrently herewith, which is signed by the Debtor's CEO under penalty of perjury, establish that those conditions are met with respect to all payments the Debtor seeks authority to make under this Motion.

///

///

## III.

## CONCLUSION

For the reasons stated above, the Debtor respectfully requests that the Court enter an order:

(a) granting the Motion;

(b) affirming the adequacy of the notice given;

(c) finding that the relief requested in the Motion is necessary to avoid immediate and irreparable harm; and

(d) authorizing the Debtor to (i) pay all pre-petition Wages to its employees and (ii) honor accrued vacation and leave benefits in the ordinary course of business, provided that no Employee shall receive over $10,950 in value on account of pre-petition claims for Wages and vacation and leave benefits.

Dated: April 7, 2010

LANDAU GOTTFRIED & BERGER LLP
MICHAEL I. GOTTFRIED
MONICA RIEDER

By: _____
Michael I. Gottfried
Proposed Counsel for 944 Media, LLC